UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RESEARCH AND DEVELOPMENT CENTER
"TEPLOENERGETIKA," LLC,

        Petitioner,

v.                              Civil No. 2:15cv362

EP INTERNATIONAL, LLC and
WORLDWIDE VISION, LLC,

        Respondents.

## OPINION AND ORDER

This matter comes before the Court on Research and Development Center, "Teploenergetika," LLC's ("Petitioner" or "R&D") Petition for Confirmation of Arbitral Awards and Entry of Judgment. ECF No. 1 [hereinafter "Petition"]. Petitioner requests that the Court confirm and enforce three arbitration awards from the International Commercial Arbitration Court at The Chamber of Commerce and Industry of the Russian Federation ("ICAC"): two of the awards equal $15,596,815.42, and are against Respondent EP International, LLC ("EP"); and one of the awards is for $1,084,471.80, and is against Respondent Worldwide Vision, LLC ("Worldwide" or, collectively, "Respondents"). With the Petition fully briefed, and oral argument completed, this matter is ripe for consideration.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The relationship between the parties began during construction of two natural gas power plants outside of Moscow in Tereshkovo and

Kuzhukovo.  Opp'n to Petition, 2, ECF No. 9 [hereinafter "Opp'n"].
The power plants were owned by ICFS International, LLC ("ICFS").
Decl. of Alexander Razinski, ¶ 10, ECF No. 10 [hereinafter "First
Razinski Decl."].  Zorlu Enerji Elektrik Uretim Anonim Sirketi
("Zorlu Enerji") owned a 51% share of ICFS and was the majority
shareholder.  Id. ¶ 11.  Zorlu Enerji is a subsidiary of Zorlu
Holding Anonim Sirketi ("Zorlu Holding").  Id.  Invar
International, Inc. ("Invar") owned a 24.5% portion of ICFS, and
Alexander Razinski ("Mr. Razinski") is Invar's president.[1]  Id.
¶ 10.

Power plant construction derailed and a dispute arose between
Zorlu Enerji, Zorlu Holding, Invar, and Mr. Razinski in 2011 and 2012.
Id. ¶ 17.  This dispute resulted in multiple suits in various venues,
but all suits were resolved during a 2012 arbitration before a panel
at the Chamber of Commerce and Industry in Geneva, Switzerland ("2012
Geneva arbitration").  During this 2012 arbitration, Zorlu Enerji
and Zorlu Holding alleged counterclaims of fraud, conspiracy, and
breach of fiduciary duty against Invar and Mr. Razinski, including
allegations that R&D's loans to EP and Worldwide were a means by which
Mr. Razinski perpetrated the alleged fraud scheme.  Id. Ex. A,
Statement of Counterclaim, ¶ 103, ECF No. 10-1.  The dispute between

---

[1] The parties represented to the Court during the December 16, 2015 hearing
that the remaining 24.5% of ICFS was held by Talex International, LLC
("Talex").  Talex is not named as a party in the ICAC arbitration, or in
this suit.

the four parties was settled on November 26, 2012.  Opp'n at 2; id.

Ex. A, Settlement Agreement, ECF No. 9-1 [hereinafter "2012

Settlement Agreement"].[2]   The 2012 Settlement Agreement included a

comprehensive release of all claims between Zorlu Enerji, Zorlu

Holding, Invar, and Mr. Razinski related to the 2012 Geneva

arbitration, then-pending litigation in New York, and other

potential claims "relating to those matters or their underlying

disputes."  2012 Settlement Agreement at 1.   The parties also

agreed that Invar and Mr. Razinski were to receive a settlement

payment.  Id. § 2.11; Opp'n at 3.  The 2012 Settlement Agreement

further included a provision prohibiting any party from "aiding and

abetting" others in prosecuting claims against the other parties to

the 2012 Settlement Agreement or their "related entities."  Opp'n

at 3; 2012 Settlement Agreement §§ 5.1-5.2.  "Related entity," as

defined by the 2012 Settlement Agreement, includes "related or

---

[2] On October 27, 2015, Magistrate Judge Robert Krask ordered that the 2012
Settlement Agreement (ECF No. 9-1) and the Statement of Counterclaim from
the 2012 Geneva arbitration (ECF No. 10-1) be sealed.  ECF No. 17.
Further, due to the confidentiality provision contained within the 2012
Settlement Agreement, Magistrate Judge Krask ordered sealed Respondents'
Opposition to the Petition for Confirmation of Arbitral Awards and Entry
of Judgment (ECF No. 9), Respondents' Response to Petitioner's Brief in
Support of Petition for Confirmation of Arbitral Awards and Entry of
Judgment (ECF No. 20), Respondents' Supplemental Memorandum of Law (ECF
No. 31), and Respondents' Rebuttal to Petitioner's Opposition to their
Supplemental Memorandum of Law (ECF No. 38).  See ECF Nos. 17, 28, 37, 43.
Respondents, however, have referred to the contents of the 2012 Settlement
Agreement and the Statement of Counterclaim throughout the unredacted
portions of their briefs and in open court during oral argument on December
16, 2015.  Therefore, to the extent that Respondents have discussed the
contents of these sealed documents in their briefs, and in open court, the
Court considers Respondents' arguments regarding the need for such
information to be sealed to have been waived.

affiliated Persons, any other Person over which a Party has control through a direct or indirect interest, any trust of which a Party is a settler or beneficiary, and the administrators . . . of the foregoing." Opp'n at 6-7; 2012 Settlement Agreement § 2.10.

Petitioner R&D is a Russian limited liability company, headquartered in Belgorod, Russia, and currently owned by Stramol Finance Limited. Petition ¶ 1; Pet'r's Reply in Support of Pet. for Confirmation, 4 n.1, ECF No. 26 [hereinafter "Pet'r's Second Reply"]. Petitioner was engaged as a consultant and subcontractor during the power plant construction by Zorlu Industrial ve Energy Tesisleri Inshaat Tijaret ("Zorlu Industrial"), a wholly-owned subsidiary of Zorlu Holding.[3]   Opp'n at 4; First Razinski Decl. ¶¶ 9, 13. Petitioner's only sources of revenue were contracts related to the power plant construction. First Razinski Decl. ¶ 9. R&D's power plant contracts with Zorlu Industrial were terminated in early 2011, and, shortly thereafter, Zorlu Industrial sued R&D for return of money it had paid R&D pursuant to the contracts. Id. ¶¶ 13, 15. Zorlu Industrial prevailed in its lawsuit. Id. ¶ 15. Following the lawsuit, R&D was placed in receivership because it no longer had any revenue from its power plant contracts. Id. ¶ 16. R&D is currently engaged in bankruptcy proceedings in Russia. Pet'r's Second Reply, Ex. A, Vershinin Decl. ¶ 1, ECF No. 26-1 [hereinafter "Vershinin

---

[3] During oral argument, Zorlu Industrial was described as a construction manager on the power plant project.

Decl."].   Zorlu Industrial is R&D's majority creditor, holding 59.55% of R&D's debt, and it appears that R&D also has five minority bankruptcy creditors.   Id.

Respondents EP and Worldwide are both Virginia limited liability companies.  Petition ¶¶ 2, 3.  Alexander Razinski is the majority member of both Respondents.  First Razinski Decl. ¶¶ 6, 7. From 2006 to 2009, Worldwide was the majority member of R&D.   Id. ¶ 8.  Worldwide transferred its ownership of R&D to Stramol Finance Limited in 2009.[4]  Opp'n at 4.  During the period in which Worldwide was R&D's majority member, R&D made two loans to EP: a loan in 2007 for $8 million, reflecting an initial loan of $7 million and an additional $1 million loan, and a loan in 2008 for $5 million. Petition ¶ 7; id. Ex. A, 2007 Loan Agreement, ECF No. 1-1; id. Ex. B, 2008 Loan Agreement, ECF No. 1-2.  During that same period, R&D also made one loan to Worldwide in 2009 for $1.8 million, reflecting an initial loan amount of $300,000 and an additional $1.5 million in loans.  Id. ¶ 7; id. Ex. C, 2009 Loan Agreement, ECF No. 1-3.  Each loan document dictated that, should a dispute arise, the dispute would be submitted to arbitration at the ICAC.  Id. ¶ 8.  EP and Worldwide defaulted on each of these loans.  Id. ¶ 9.

The defaulted loans to EP and Worldwide were addressed by a

---

[4] The ownership interests in Stramol Finance Limited are not part of the record before this Court.  See Pet'r's Resp. to Resp'ts' Suppl. Br., 8-9, ECF No. 36; Resp'ts' Rebuttal to Pet'r's Opp'n to their Suppl. Mem. of Law, 4-5. ECF No. 38.

meeting of Petitioner R&D's bankruptcy creditors on February 19, 2013. During that meeting, two resolutions were adopted, by a majority vote of R&D's bankruptcy creditors, not to file claims on the defaulted loans against EP and Worldwide in the ICAC arbitration and not to pay duties, fees, or expenses for representation in the ICAC arbitration regarding such claims. Vershinin Decl. ¶ 2. The resolutions were proposed by Zorlu Industrial and adopted by a majority of creditor votes, largely due to Zorlu Industrial's 59.55% share. Id. ¶ 1 (describing the voting percentages of R&D's creditors). However, R&D's minority creditors objected and applied to the Arbitration Court of Belgorod to annul the resolutions. Id. ¶ 2. The resolutions were annulled by Judgment of the Arbitration Court of Belgorod on August 23, 2013, finding that the resolutions violated the minority creditors' rights and impeded the exercise of the bankruptcy manager's power. Id. Stramol Finance Limited, R&D's majority member, appealed the Arbitration Court's Judgment, and the Judgment was affirmed by the Ninth Court of Appeal on November 28, 2013. Id. The Ninth Court of Appeal's affirmation of the Judgment "enabled the Bankruptcy Manager to pay the arbitration charge," and R&D's Bankruptcy Manager filed claims on its behalf against EP and Worldwide at the ICAC arbitration in December 2013. Id.; Petition ¶ 9; Opp'n at 4. Shortly thereafter, on February 20, 2014, R&D's bankruptcy creditors met again. Opp'n, Ex B. Translation, ECF No. 27-1. Following the legal proceedings noted

above, and after the Bankruptcy Manager filed claims against EP and Worldwide in the ICAC arbitration, Zorlu Industrial proposed that the filing fee should be paid to ICAC and certain funds should be paid to legal counsel for the ICAC proceedings. _Id._ The creditors present at the February 20th meeting unanimously adopted Zorlu Industrial's proposal, again, largely due to Zorlu Industrial's large percentage of the votes available. _Id._

The ICAC notice of proceedings was timely delivered to Respondents via DHL, pursuant to ICAC Rule § 16.5, which permits notification "by courier against receipt." Petition ¶ 10; Rules of the ICAC § 16.5, available at https://mkas.tpprf.ru/en/documents/. Despite receiving notice, Respondents EP and Worldwide did not participate in the ICAC arbitration proceedings in any way. _Id._ ¶ 11. Pursuant to ICAC rules and procedures, three awards were rendered in favor of Petitioner R&D against EP and Worldwide. _Id._ On September 25, 2014, ICAC arbitrators entered judgment against EP, in favor of R&D, for $6,512,462.79, including interest and costs. _Id._ ¶ 12; _id._ Ex. E, Sept. 25, 2014 Judgment, ECF No. 1-5. On September 26, 2014, ICAC arbitrators entered judgment against Worldwide, in favor of R&D, for $1,084,471.80, including interest and costs. _Id._ ¶ 13; _id._ Ex. G, Sept. 26, 2014 Judgment, ECF No. 1-7. Finally, on October 3, 2014, ICAC arbitrators entered judgment against EP, in favor of R&D, for $9,084,352.63, including interest and costs. _Id._ ¶ 14; _id._ Ex. I, Oct. 3, 2014 Judgment, ECF No. 1-9.

On August 13, 2015, Petitioner R&D timely filed in this Court its Petition for Confirmation of Arbitral Awards and Entry of Judgment to enforce the three ICAC awards.  ECF No. 1.  Respondents EP and Worldwide filed their Opposition to Confirmation of Arbitral Awards on September 25, 2015, arguing that enforcement of the ICAC arbitral awards should be refused because 1) EP and Worldwide were unable to present their case at arbitration, and 2) enforcement of the three arbitral awards would be contrary to the public policy of the United States.  ECF No. 9.  R&D filed its Brief in Support of Petition for Confirmation on November 3, 2015.  ECF No. 18 [hereinafter Pet'r's First Reply].  First, R&D argues in response, that there were alternatives available that would have allowed Respondents to participate in the ICAC arbitrations and, to the extent that such alternatives were insufficient to allow Respondents to participate in the arbitrations, Respondents waived such argument because they did not raise such defense during the arbitrations.  Id. at 8-9.  Second, with respect to Respondents' public policy defense, R&D primarily argues that Respondents waived their public policy defense due to their failure to raise such arguments at the ICAC arbitration.  Id. at 5.  The parties further agreed to, and submitted, additional briefing on the issue of confirmation and enforcement of the ICAC arbitral awards.  Resp. to Pet'r's First Reply, ECF No. 20; Pet'r's Second Reply, ECF No. 26.  The parties then appeared before the Court for oral argument on December 16, 2015.

At the December 16th hearing, the Court ordered further briefing from the parties regarding Respondents' newly raised res judicata public policy argument.  Respondents filed their Supplemental Memorandum on December 31, 2015.  Resp'ts' Suppl. Mem. of Law, ECF No. 31. Petitioner filed its Response to Respondents' Supplemental Memorandum on January 12, 2016.  Pet'r's Resp. to Resp'ts' Suppl. Br., ECF No. 36.  Respondents filed their final Rebuttal Brief on January 19, 2016.  Resp'ts' Rebuttal to Pet'r's Opp'n to their Suppl. Mem. of Law, ECF No. 38.

## II. LEGAL STANDARD

Petitioner seeks recognition and enforcement of the three ICAC arbitration awards under a portion of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 [hereinafter "New York Convention"].  The FAA allows for recognition and enforcement of foreign arbitral awards in district courts.  9 U.S.C. § 203.  ("An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such action or proceeding . . . .").

The FAA provides that:

Within three years after an arbitral award falling under the [New York] Convention is made, any party to the arbitration may apply to any court having jurisdiction

under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207. The New York Convention broadly applies to "arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention, Art. I.1. Both the United States and the Russian Federation are signatories to the New York Convention.[5]

The New York Convention allows for recognition and enforcement of an arbitral award to be refused if the party against whom the award is invoked demonstrates that:

(a) The parties['s arbitration agreement] . . . is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ; or

(d) The composition of the arbitral authority or the

---

[5] A list of signatories to the New York Convention is available at http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

> arbitral procedure was not in accordance with the
> agreement of the parties, or, failing such agreement, was
> not in accordance with the law of the country where the
> arbitration took place; or
>
> (e) The award has not yet become binding on the parties,
> or has been set aside or suspended by a competent authority
> of the country in which, or under the law of which, that
> award was made.

New York Convention, Art. V.1.  Recognition and enforcement may also

be refused if the authority reviewing a petition for recognition and

enforcement of an arbitral award finds that: "(a) The subject matter

of the difference is not capable of settlement by arbitration under

the law of that country; or (b) The recognition or enforcement of

the award would be contrary to the public policy of that country."

Id. Art. V.2.  Recognition and enforcement of an arbitral award under

the New York Convention may also be deferred if an application to

set aside or suspend an arbitral award has been made to the competent

authority of the country in which, or under the law of which, that

award was made.  Id. Art. VI.  "'The party opposing enforcement of

an arbitral award has the burden to prove that one of the seven

defenses under the New York Convention applies.'"  Telenor Mobile

Commc'ns AS, LLC v. Storm LLC, 584 F.3d 396, 405 (2d Cir.

2009)(quoting Encyclopaedia Universalis S.A. v. Encyclopaedia

Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005)); see Imperial

Ethiopian Gov't v. Baruch-Foster Corp., 535 F.2d 334, 336 (5th Cir.

1976) ("The burden of proof is on the party defending against

enforcement." (internal citations omitted)).

The "process and extent of federal judicial review of an arbitration award are substantially circumscribed." Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006). The scope of judicial review for an arbitrator's decision "is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all." Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998). The Court of Appeals for our Circuit has noted that, in reviewing an arbitral award, "'a district or appellate court is limited to determining whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" Three S Delaware, Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir. 2007) (quoting Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994)). Thus, "'[t]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" RZS Holdings AVV v. PDVSA Petroleos S.A., 598 F. Supp. 2d 762, 765 (E.D. Va. 2009) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)). As noted above, Respondents bear the burden to demonstrate that a defense to recognition and enforcement applies. "'The burden is a heavy one, as the showing required to avoid summary confirmance is high.'" Telenor Mobile Commcn's, 584 F.3d at 405 (quoting Encyclopaedia Universalis, 403 F.3d at 90).

12

## A. Respondents' Participation Defense

"[T]he strong federal policy in support of encouraging arbitration and enforcing arbitration awards dictates that [a district court] narrowly construe the defense that a party was 'unable to present its case.'" Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier, 508 F.2d 969, 975 (2d Cir. 1974); see Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc., 665 F.3d 1091, 1095-96 (9th Cir. 2011)[hereinafter "Ministry of Def. of Iran"] (noting that defenses to enforcement of arbitral awards are to be construed narrowly). A participation defense corresponds to a constitutional due process defense. Generica Ltd. v. Pharm. Basics, Inc., 125 F.3d 1123, 1129-30 (7th Cir. 1997) (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)); see Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 298 (5th Cir. 2004) ("Article V(1)(b) 'essentially sanctions the application of the forum state's standards of due process . . . ." (internal citation omitted)); Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 146 (2d Cir. 1992) (finding that enforcement of an arbitral award should be refused if a party was denied due process). An arbitral award "should be denied or vacated if the party challenging the award proves that he was not given a meaningful opportunity to be heard as our due process jurisprudence defines it."

Generica Ltd., 125 F.3d at 1129-30 (citing Iran Aircraft Indus., 980 F.2d at 145).

Refusal to recognize and enforce an arbitral award because a party is "unable to present [its] case" at arbitration is uncommon, particularly when there are alternatives to physical presence at arbitration included in the rules of the arbitral body.  See, e.g., Rules of the ICAC, available at https://mkas.tpprf.ru/en/documents/. However, this defense, colloquially identified by Petitioner as the "participation defense," may be successful when a party can show that the arbitral panel denied the party a meaningful hearing.  For example, the Court of Appeals for the Second Circuit refused enforcement of an arbitral award, because a party was "unable to present [its] case," where an arbitral judge misadvised the party against whom enforcement was sought regarding presentation of crucial evidence and that party was faulted for not presenting such evidence.  Iran Aircraft Indus., 980 F.2d at 146.  Additionally, arbitral awards have been vacated on the basis of due process, under a separate section of the FAA, in circumstances where an arbitral panel refuses to accept or give weight to crucial, and otherwise acceptable, evidence.  See Generica Ltd., 125 F.3d at 1131 (reviewing cases in which an arbitrator denied a party the opportunity for a meaningful hearing); Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 21 (2d Cir. 1997) (vacating an arbitral award because an arbitration "panel's refusal to continue hearings

14

to allow [a crucial and non-cumulative witness] to testify amount[ed] to fundamental unfairness and misconduct"); Hoteles Condado Beach v. Union De Tronquistas Local 901, 763 F.2d 34, 42 (1st Cir. 1985) (affirming vacation of arbitral award because "[t]he arbitrator refused to consider relevant evidence in making his award, . . . [and] the arbitrator ignored the clear language of the collective bargaining agreement . . . [denying] the parties a full and fair hearing on the dispute . . .").

When a party asserts that its physical presence at arbitration is prevented, it is generally unable to prevail on such a defense if there are available alternative means of presenting its case. See Rive v. Briggs of Cancun, Inc., 82 F. App'x 359, 364 (5th Cir. 2003) (unpublished); Empresa Constructora Contex Limitada v. Iseki, Inc., 106 F. Supp. 2d 1020, 1026 (S.D. Cal. 2000). For example, the Court of Appeals for the Fifth Circuit found, in an unpublished opinion, that a party had sufficient opportunity to present its case, even if unable to be physically present, if the party could send a corporate representative or attorney to represent it at the arbitration or if the party could participate via telephone. Rive, 82 F. App'x at 364; see China Nat. Bldg. Material Inv. Co. v. BNK Int'l LLC, No. 09-CA-488-SS, 2009 WL 4730578, at *7 (W.D. Tex. Dec. 4, 2009) (unpublished) (noting that the defendant's "inconvenience in attending hearings held in [Hong Kong] does not amount to a denial of [d]efendant's due process rights," when the defendant had the

opportunity to appear in person, via videoconferencing, or through its Hong Kong attorneys). Further, a respondent's decision not to attend an arbitration proceeding due to fear of being taken into custody or being subject to other legal proceedings does not constitute an inability to attend the proceedings where there are other alternatives available. See Rive, 82 F. App'x at 364 (finding that respondent was not "unable to present its case" in Mexico due to "fear of being detained" because he could have participated in arbitration via a company representative, an attorney, or teleconference); Empresa Constructora Contex Limitada, 106 F. Supp. 2d at 1025 (finding that corporate respondent was not "denied an adequate opportunity to defend itself in the underlying arbitration proceedings" because, although no corporate representative could be present during proceedings for fear of detention in Chile on criminal charges, the respondent was "otherwise able to present [its] defense"); see also Nat'l Dev. Co. v. Khashoggi, 781 F. Supp. 959, 962 (S.D.N.Y. 1992) ("Khashoggi's decision not to attend the arbitration proceeding in England because he was afraid of being taken into custody for extradition to face criminal charges in the United States does not constitute an inability to attend the proceedings.").

### B. Waiver of Enforcement Defenses

As a consequence of failing to raise a defense that could have been presented to an arbitral panel, a party may be precluded from

raising such arguments at a later proceeding to enforce the arbitral award.  Generally, in proceedings to enforce domestic arbitration awards, "[f]ailure to present an issue before an arbitrator waives the issue in an enforcement proceeding." Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731, 990 F.2d 957, 960-61 (7th Cir. 1993) (citing Local 100A v. John Hofmeister and Son, Inc., 950 F.2d 1340, 1343-44 (7th Cir. 1991)); see Van Buren v. Cargill, Inc., No. 10-CV-701S, 2016 WL 231399, at *5 (W.D.N.Y. Jan. 19, 2016) (unpublished)("Plaintiffs' contentions not previously raised are therefore considered waived." (citing Rai v. Barclays Capital Inc., 739 F. Supp. 2d 364, 374 (S.D.N.Y. 2010); Vigorito v. UBS PaineWebber, Inc., 477 F. Supp. 2d 481, 487 (D. Conn. 2007)).  Such maxim has been applied in proceedings to enforce international arbitration awards as well: an issue is forfeited if a party could have raised such issue at arbitration but failed to do so, and such issue cannot be re-litigated before the district court considering enforcement of the arbitration award. Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 315 (2d Cir. 1998) (citing National Wrecking Co., 990 F.2d at 960); see AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 139 F.3d 980, 982 (2d Cir. 1998) [hereinafter "AAOT Foreign Econ. Ass'n"] ("The settled law of this circuit precludes attacks on the qualifications of arbitrators on grounds previously known but not raised until after an award has been rendered."); Four Seasons Hotels & Resorts B.V. v. Consorcio Barr,

S.A., 613 F. Supp. 2d 1362, 1370 (S.D. Fla. 2009) (finding that respondent's refusal to participate in arbitration evidentiary hearing, even if based on good faith desire to maintain right to appeal, did not make respondent "unable to present his case" at arbitration and respondent's objections were waived).

Further, failure to attend an arbitration proceeding, and to raise any defense, may result in waiver of a public policy defense at a later proceeding to enforce the arbitration award, to the extent that such public policy defense is essentially a claim or defense that could have been, but was not, raised at arbitration. Thus, if a party claims that the underlying contract or agreement violates public policy, "that claim is 'to be determined exclusively by the arbitrators,' and a party forfeits the claim if it fails to raise it during arbitration." Yukos Capital S.A.R.L. v. Samaraneftegaz, 592 F. App'x 8, 11-12 (2d Cir. 2014)(unpublished) (citing Europcar Italia, 156 F.3d at 315); see Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) ("[R]egardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); Europcar Italia, 156 F.3d at 315-16 (rejecting a public policy defense as waived because "the issue whether the underlying contract . . . was forged or fraudulently induced [is] a matter to be determined exclusively by the arbitrators" and such issue was not raised during arbitration).

As discussed below, the public policy defense, which may be raised at a proceeding to enforce an arbitral award, is "tightly restricted," applying "only where enforcement of the arbitration award, as opposed to enforcement of the underlying contract, would violate public policy." Yukos Capital, 592 F. App'x at 11 (emphasis added)(citing Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199, 116 F.3d 41, 46 (2d Cir. 1997)).

No matter the basis for a party's defense at arbitration, he "cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first." Cook Indus., Inc. v. C. Itoh & Co. (Am.) Inc., 449 F.2d 106, 107-08 (2d Cir. 1971); see Slaney v. The Int'l Amateur Athletic Fed'n, 244 F.3d 580, 591 (7th Cir. 2001) ("If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." (citing AGCO Corp. v. Anglin, 216 F.3d 589, 593 (7th Cir. 2000))). "Permitting parties to keep silent during arbitration and raise arguments in enforcement proceedings would 'undermine the purpose of arbitration' which is to provide a fast and inexpensive method" for resolution of disputes. Nat'l Wrecking Co., 950 F.2d at 960-61 (quoting John Hofmeister, 950 F.2d at 1344-45).

## C. Respondents' Public Policy Defense

When a public policy defense is properly before a court, Article V.2(b) of the New York Convention provides that, "[r]ecognition and enforcement of an Arbitral Award may also be refused if . . . the recognition or enforcement of the award would be contrary to public policy of that country." The New York Convention's "public policy defense is to be 'construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice.'" Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG, 783 F.3d 1010, 1016 (5th Cir. 2015) (quoting M&C Corp. v. Erwin Behr GmbH & Co., KG, 87 F.3d 844, 851 n.2 (6th Cir. 1996)); Ministry of Def. of Iran, 665 F.3d at 1097 (9th Cir. 2011) (citing cases in support); Slaney, 244 F.3d at 593 (same). A respondent opposing a petition to confirm and enforce a foreign arbitral award must demonstrate that such recognition violates "some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH, 141 F.3d 1434, 1445 (11th Cir. 1998) (quoting W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983)); see United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 43 (1987) (establishing the same principle regarding refusal to recognize a domestic arbitral award).

"The [public policy] defense is frequently invoked but rarely successful, particularly in view of the strong United States policy favoring arbitration." Agility Pub. Warehousing Co. K.S.C., Prof'l Contract Administrators v. Supreme Foodservice GmbH, 495 F. App'x 149, 151-52 (2d Cir. 2012) (unpublished) (citing Telenor Mobile Commcn's, 584 F.3d at 410; Ministry of Def. of Iran, 665 F.3d at 1097). For example, the Court of Appeals for the Third Circuit, in an unpublished case, rejected respondent's argument that it would violate public policy to enforce an arbitral award that was simultaneously the subject of a motion to vacate in the jurisdiction of issuance. Steel Corp. of Philippines v. Int'l Steel Servs., Inc., 354 F. App'x 689, 694 (3d Cir. 2009) (unpublished). The Third Circuit determined that the "principal purpose for acceding to the [New York] Convention was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts." Id. (quoting Admart AG v. Stephen and Mary Birch Found., 457 F.3d 302, 307 (3d Cir. 2006). Thus, "parties may bring suit to enforce awards notwithstanding the existence of ongoing proceedings elsewhere." Id. (citing Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi, 335 F.3d 357, 366-67 (5th Cir. 2003); Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 22 (2d Cir. 1997)). Further, the Court of Appeals for the Ninth Circuit found that enforcement of an arbitral award in favor of Iran was appropriate, even though the United States had a national policy that placed

restrictive trade and economic limitations against Iran, and confirmation of such award would require monetary payment, subject to appropriate licensing, to Iran. Ministry of Def. of Iran, 665 F.3d at 1098. The Ninth Circuit determined that respondent had not "identified a public policy sufficient to overcome the strong federal policy in favor of recognizing foreign arbitration awards." Id. at 1099-1100 (citing Parsons & Whittemore Overseas Co., 508 F.2d at 974).

### III. DISCUSSION

Petitioner R&D seeks timely confirmation of three arbitral awards and entry of judgment from this Court. The Federal Arbitration Act provides that the Court "shall confirm the award[s] unless it finds grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207 (emphasis added). Deferral of recognition or enforcement is not at issue in this matter. Respondents EP and Worldwide assert that the Court should refuse to confirm and enforce the arbitral awards based on two separate sections of the New York Convention.

First, Respondents assert that recognition and enforcement of the awards should be refused because they were "unable to present [their] case" at arbitration. New York Convention Article V.1(b). Respondents argue that Mr. Razinski, whose presence at arbitration was necessary for a successful defense, was unable to attend

22

arbitration because he "feared that he could not fairly and safely defend the arbitration proceedings should he return to Russia." Opp'n at 8.   Mr. Razinski explains that he is "concerned for his safety should [he] ever travel to Russia" because, in 2011, he received threatening communications from Murat Sungur Bursa, the chief executive officer of a Zorlu entity.   First Razinski Decl. ¶ 18; id. Ex B., ECF No. 10-2.   Additionally, Mr. Razinski explains that Russian tax authorities executed a raid of Petitioner's business in April 2011, and, due to that raid, Mr. Razinski was concerned that he "could be detained under false pretenses should [he] ever travel to Russia."   Id. ¶ 19.   In response, Petitioner argues that there were alternatives available (under the ICAC rules) to Respondents, or Mr. Razinski, physically appearing at the arbitration. Petitioner claims that Respondents have failed to demonstrate that they were unable to present their case, via these alternatives, or that Mr. Razinski's physical presence was essential, particularly because Respondents are corporate entities.   Pet'r's First Reply at 8; Pet'r's Second Reply at 2.   Further, Petitioner argues that, even if these alternatives were insufficient, Respondents waived this participation defense because they did not in any manner raise such defense during arbitration.   Pet'r's First Reply at 9.

Second, Respondents assert that recognition and enforcement of the awards should be refused because "recognition or enforcement of the award[s] would be contrary to the public policy" of the United

States.   New York Convention Article V.2(b).   Respondents argue that the 2012 Settlement Agreement between Zorlu Enerji, Zorlu Holding, Invar, and Mr. Razinski, resulting from the 2012 Geneva arbitration, "fully and finally resolved" all disputes between the four parties and their related entities, Opp'n at 4, and enforcement of the three arbitral awards would unravel the 2012 Settlement Agreement, id. at 6-7.   Respondents' public policy defense is three-fold.   First, Respondents assert that the United States' public policy favors settlement of legal disputes, and enforcement of the instant arbitration awards would violate paragraphs 4.1 and 4.2 of the 2012 Settlement Agreement because enforcement would effectively require Petitioner, a "related entity" of Zorlu Holding and Zorlu Enerji, to pay Respondents, who are "related entities" of Mr. Razinski.  Id. at 6-7; id. Ex. A.   Second, Respondents assert that enforcement of the instant arbitration awards would violate public policy favoring settlement because Zorlu Industrial, a related entity of Zorlu Enerji and Zorlu Holding, violated paragraph 5.2 of the 2012 Settlement Agreement by "aiding and abetting" the underlying claims against Respondents.   Id. at 7; id. Ex. A. Finally, as Respondents argued at the December 16th hearing, enforcement of the instant arbitration awards would violate the United States' public policies embodied in the doctrine of res judicata because Petitioner's current claims on the defaulted loans were included and settled by the 2012 Settlement Agreement.

Resp'ts' Suppl. Mem. of Law at 4.   In response, Petitioner argues
that Respondents waived their public policy defenses due to their
failure to in any way raise, at the ICAC arbitrations, issues
regarding violation or scope of the 2012 Settlement Agreement.
Pet'r's First Reply at 5; Pet'r's Resp. to Resp'ts' Suppl. Br. at
10.    Petitioner also argues that, even if such public policy
arguments are not waived, Respondents have not demonstrated that the
policies favoring settlement or res judicata are among the United
States' "most basic notions of morality and justice," much less that
such alleged public policies apply on these facts.   Pet'r's First
Reply at 4; Pet'r's Second Reply at 3-4; Pet'r's Resp. to Resp'ts'
Suppl. Br. at 2.

### A. Participation Defense

A party is "unable to present [its] case" at arbitration if the
party lacks the "'opportunity to be heard at a meaningful time and
in a meaningful manner.'"   Generica Ltd., 125 F.3d at 1129-30
(quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)); Karaha Bodas
Co., 364 F.3d at 298; Iran Aircraft Indus. 980 F.2d at 146.
Respondents have not demonstrated that they were "unable to present
[their] case" before the ICAC.   As explained below, the ICAC Rules
specifically provide that a party may appear, directly or through
their duly authorized representative(s), and provide written
statements on their behalf and/or seek to appear by videoconference.
Despite receiving notice of the ICAC arbitrations, Respondents did

not file any evidence or present any argument to the ICAC arbitral panels.

Respondents had the opportunity to appear before the ICAC "directly or through their duly authorized representatives, including foreign organizations and citizens, appointed by the parties in their discretion." Rules of the ICAC § 27, available at https://mkas.tpprf.ru/en/documents/. Further, Respondents had the opportunity to submit written statements and evidence "before the oral hearing of the case." Id. §§ 30, 31. Respondents also had the opportunity to "request to participate in the hearing by means of videoconferencing." Id. § 32.6. The Rules of the ICAC note that a request to participate via videoconferencing "is considered by the arbitral tribunal bearing in mind the circumstances related to the dispute, the position of the other party and technical feasibility." Id.

In this case, Respondents had proper notice of the ICAC arbitrations, the opportunity, either directly or through a representative, to file evidence or argument with the ICAC in person or remotely, and Respondents had the opportunity to request oral hearing via video or teleconference. Rules of the ICAC §§ 27, 30-32. None of this occurred. Additionally, Respondents have not demonstrated why these alternatives to direct physical appearance were insufficient to allow Respondents to present their case or to allow Mr. Razinski to participate in arbitration. Moreover, even

presuming that Mr. Razinski's fear of traveling to Russia was well-founded, such fear does not constitute an inability to present Respondents' defense when there is a failure to utilize the suitable alternatives described above.  See Rive, 82 F. App'x at 364; Empresa Constructora Contex Limitada, 106 F. Supp. 2d at 1025; Nat'l Dev. Co., 781 F. Supp. at 962.  Therefore, Respondents have failed to demonstrate that they were "unable to present [their] case," and the Court will not refuse to recognize or enforce the arbitral awards on this basis.[6]

## B. Public Policy Defense

### 1. Waiver

Due to Respondents' failure to participate in arbitration, or to demonstrate some reason that would excuse them entirely from such participation, Respondents are precluded from raising defenses that could have been presented at the ICAC arbitrations and, to the extent that a public policy defense is essentially a defense that could have been raised at the ICAC arbitrations, Respondents are additionally precluded from raising such public policy defense in the instant

---

[6] Petitioner argues that Respondents failed to avail themselves of alternatives to physical presence at the arbitration.  Moreover, Petitioner appears to argue that Respondents waived their participation defense by failing to in any way raise such defense during arbitration. The Court has already addressed the Respondents' failure to avail themselves of alternatives provided by the ICAC Rules.  With respect to Petitioner's nuanced argument that, even if such alternatives were insufficient, Respondents waived their right to challenge the insufficiency of the ICAC participation alternatives by failing to raise such defense during arbitration, the Court need not address such argument because it has determined above that the alternatives were sufficient.

enforcement proceeding.  See Nat'l Wrecking Co., 990 F.2d at 960-61 ("Failure to present an issue before an arbitrator waives the issue in an enforcement proceeding." (citing Local 100A, 950 F.2d at 1343–44)).  As noted above, an argument that the underlying contract, or enforcement of the underlying contract, violates public policy is "determined exclusively by the arbitrators" and "a party forfeits the claim if it fails to raise it during arbitration." Yukos Capital S.A.R.L., 592 F. App'x at 11-12.  Respondents argue that the ICAC arbitrators should not have rendered awards based on the defaulted loan agreements between Petitioner and Respondents, because such awards violated the 2012 Settlement Agreement.  As a result, Respondents argue, enforcement of the ICAC arbitration awards (which allegedly constitute violations of the 2012 Settlement Agreement) is contrary to United States public policy favoring settlement and full and final resolution of legal disputes.  However, to accept Respondents' public policy defense, the Court would be required to make legal and factual determinations regarding the scope and meaning of terms within the 2012 Settlement Agreement that were to be "determined exclusively by the arbitrators," thus converting to a public policy violation a defense that should have been considered by the arbitral panels. See United Paperworkers Int'l Union, 484 U.S. at 45 ("The parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them . . . . . Nor does the fact that it is inquiring into a possible violation of public policy

excuse a court for doing the arbitrator's task."). Therefore, Respondents forfeit such arguments because they failed to raise them at arbitration.

The District Court for the Southern District of New York, considering an assertion in an enforcement proceeding that the underlying contract violated public policy, rejected such defense, finding that respondent had waived its public policy defense due to its failure to participate in arbitration. Yukos Capital S.A.R.L. v. OAO Samaraneftegaz, 963 F. Supp. 2d 289 (S.D.N.Y. 2013), affirmed 592 F. App'x 8 (2d Cir. 2014). In Yukos, the respondent argued that enforcement of the arbitral award would violate United States public policy, by condoning a tax evasion scheme, because the underlying loan agreements were "sham transactions" that had been invalidated by a Russian court as part of a tax evasion scheme. Id. at 293-94. Similar to the present case, the Yukos respondent failed to raise its argument regarding the underlying loan agreement at arbitration. After determining that the respondent was not "unable to present [its] case," the district court rejected the respondent's public policy argument, finding that respondent could not, after failing to contest the validity of the loans at arbitration, re-litigate the loan agreement's legality during enforcement of the arbitration award. Id. at 299. The Yukos court concluded that, "[respondent's] failure to contest the validity of the [l]oans before the ICC is a result of its own choice; it cannot now rely on its own omissions

to support a public policy defense. . . . [T]o refuse to enforce a valid award in these circumstances would run counter to the strong public policy in favor of arbitration." Id. (citing Telenor Mobile Commcn's, 584 F.3d at 410-11).

Like the loan agreement at issue in Yukos, determining in this case whether the loan agreements between Respondents and Petitioner were incorporated in the 2012 Settlement Agreement, or whether enforcement of the loan agreements breached the 2012 Settlement Agreement, were matters to be resolved by the ICAC arbitrators. However, Respondents did not raise such arguments during arbitration. Therefore, Respondents waived their right to here argue on public policy grounds that the 2012 Settlement Agreement precludes enforcement of the three ICAC arbitration awards. See Europcar Italia, 156 F.3d at 315(rejecting the respondent's argument that enforcement of an arbitral award would violate public policy because the underlying agreement was forged, and finding that the respondent forfeited such argument because it failed to raise it at arbitration).

## 2. Substantive Public Policy Defense

Alternatively, even if the Court were to undertake a substantive review of the arbitral awards, Respondents have failed to demonstrate that enforcement of the three ICAC awards would violate an "explicit public policy" of the United States and that the terms of the 2012 Settlement Agreement would prevent an award for Petitioner on the

disputed loan agreements.  Public policy "is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." United Paperworkers Int'l Union, 484 U.S at 43.  As Petitioner effectively argues, Respondents have not identified law or legal precedent that supports their assertion that enforcing an arbitral award, which allegedly conflicts with a private settlement agreement, would violate the United States' public policy.  Pet'r's First Reply at 4; Pet'r's Resp. to Resp'ts' Suppl. Br. at 1-2.

Further, Respondents have not developed a record evidencing that, 1) under the 2012 Settlement Agreement, Petitioner, via its bankruptcy proceedings, is a "related entity" of Zorlu Enerji or Zorlu Holding, or 2) Zorlu Industrial, as a bankruptcy creditor of R&D, "aided or abetted" litigation against Mr. Razinski's related entities, EP and Worldwide, or 3) the disputed loan agreements between Petitioner and Respondents were included in the 2012 Settlement Agreement.  First, as Petitioner argues in its Second Reply brief, Respondents have not proven that the bankruptcy debtor-creditor relationship between R&D and Zorlu Industrial makes R&D a "related entity" of Zorlu Enerji or Zorlu Holding.  Pet'r's Second Reply at 4; Vershinin Decl. ¶ 2.  Second, as Petitioner argues, Respondents EP and Worldwide, as "related entities" of Mr. Razinski, have not demonstrated that Zorlu Industrial "aided and abetted" litigation against them.  Instead, Petitioner argues, it

appears that Zorlu Industrial attempted to prevent arbitration against EP and Worldwide by proposing and adopting resolutions <u>not to file</u> ICAC arbitration claims on the defaulted loan agreements and <u>not to pay</u> duties, fees, or expenses for ICAC representation regarding such claims. Pet'r's Second Reply at 3-4; Vershinin Decl. ¶ 2. Finally, as Petitioner convincingly argues in its Response to Respondents' Supplemental Brief, Respondents have not proven that the parties to, and claims resolved by, the 2012 Settlement Agreement are identical to the parties and claims at the ICAC arbitration, such that the doctrine of res judicata would preclude the arbitral panels from rendering awards on Petitioner's defaulted loan claims. Pet'r's Resp. to Resp'ts' Suppl. Br. at 2-8; see <u>Union Carbide Corp. v. Richards</u>, 721 F.3d 307, 314-15 (4th Cir. 2013) ("A party invoking res judicata must establish three elements: (1) a previous final judgment on the merits, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." (citing <u>Meekins v. United Transp. Union</u>, 946 F.2d 1054, 1057 (4th Cir. 1991))).

Therefore, even presuming that Respondents did not waive their arguments regarding the terms and preclusive effect of the 2012 Settlement Agreement by failing to raise such argument at arbitration, Respondents have not demonstrated that recognition and enforcement of the three ICAC arbitration awards "violate[s] the [United States'] most basic notions of morality and justice."

Instead, Respondents seek an improper substantive review of the three ICAC arbitration awards. Thus, the Court cannot, in light of the United States' strong public policy favoring arbitration, deny enforcement of the three ICAC arbitration awards on the basis of Respondents' public policy defense.

### IV. CONCLUSION

For the reasons discussed above, Respondents have not demonstrated that they were "unable to present [their] case" at arbitration or that enforcement or recognition of the three ICAC arbitral awards "would be contrary to public policy of [the United States]." As a result, Respondents have failed to demonstrate that this Court should refuse to confirm and enforce the three arbitral awards rendered by the ICAC against EP and Worldwide. Therefore, the Court **GRANTS** Petitioner's Petition for Confirmation of Arbitral Awards and Entry of Judgment.[7]

The Petition for Confirmation of Arbitral Awards and Entry of Judgment, ECF No. 1, is **GRANTED**. The ICAC arbitration awards dated September 25, 2014, September 26, 2014, and October 3, 2014 are **CONFIRMED**.

The Clerk of the Court is **DIRECTED** to enter judgment in favor of Petitioner against (1) Respondent EP International, LLC for $6,512,462.79, related to the September 25, 2014 ICAC Arbitration

---

[7] To the extent that Petitioner seeks costs and its attorney's fees, such relief must be sought in accordance with the Federal Rules of Civil Procedure.

Judgment; (2) Respondent Worldwide Vision, LLC for $1,084,471.80, related to the September 26, 2014 ICAC Arbitration Judgment; and (3) Respondent EP International, LLC for $9,084,352.63, related to the October 3, 2014 ICAC Arbitration Judgment.

The Clerk is further **DIRECTED** to provide a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 26 , 2016

34